UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
J.V.,

                       Plaintiff,

     - against -

NEW YORK STATE OFFICE OF CHILD AND
FAMILY SERVICES GOSHEN SECURE
CENTER DIRECTOR AYKROYD LAKE in his
individual capacity, GOSHEN SECURE CENTER
UNKNOWN SUPERVISORY STAFF MEMBERS
in their respective individual capacities, GOSHEN
SECURE CENTER OFFICER VERONICA
HAYES, in her individual capacity, GOSHEN
SECURE CENTER OFFICER CHRISTOPHER
CARDINAL, in his individual capacity,
UNKNOWN GOSHEN SECURE CENTER
OFFICERS 1-4, in their respective individual
capacities,

                       Defendants.
--------------------------------------------------------------x

**OPINION & ORDER**

No. 23-CV-3419 (CS)

Appearances:

Evan M. Foulke
Foulke Law Firm
Goshen, New York
*Counsel for Plaintiff*

Glenne Ellen Fucci
Patrick Baker
Assistant Attorneys General
New York State Office of the Attorney General
New York, New York
*Counsel for Named Defendants*

Seibel, J.

Before the Court is the motion to dismiss of Defendants Aykroyd Lake, Veronica Haynes[1], and Christopher Cardinal.  (ECF No. 37.)  For the following reasons, Defendants' motion is GRANTED.

## I.  **BACKGROUND**

For purposes of this motion, the Court accepts as true the facts, but not the conclusions, sets forth in the Amended Complaint.  (*See* ECF No. 34 ("AC").)

### A.  **Facts**

J.V. ("Plaintiff") was born on January 7, 2004.  (AC ¶ 15.)  In about December 2019, he began serving a sentence at the Goshen Secure Center (the "Center"), a detention center operated by New York's Office of Children and Family Services ("OCFS") for male juveniles who were convicted of certain violent felonies and sentenced in adult criminal court while under the age of sixteen.  (*Id.* ¶¶ 9, 16.)  While at the Center, Plaintiff was housed in a wing of the Center designated for children participating in the Sexually Harmful Behavior Treatment Program ("the SHB Wing") because they had been convicted of a crime involving sexually harmful behavior. (*Id.* ¶ 17.)  Plaintiff alleges upon information and belief that this specialized wing was to be monitored and surveilled at all times by at least three Center security guards; that two or more inmates were to never be left unsupervised, including in the bathroom and shower areas; that the Center's written rules required that the bathroom or shower room be monitored and surveilled by Center security staff when two or more inmates were inside; and that the bathrooms in the

---

[1] Defendants note that Haynes was incorrectly sued as "Hayes."  (*See* ECF No. 38 ("Ds' Mem.") at 1.)  The Court will use the proper spelling of her surname throughout this Opinion.

specialized wing were customized to provide inmates privacy but allow guards to monitor the bathrooms for inmate safety. (*Id.* ¶¶ 19-22.)

Javon Roberts was housed in the SHB Wing from December 2019 until July 2020, when he was moved to an adult prison. (*Id.* ¶ 23.) In early January 2020, Roberts allegedly approached Plaintiff and, under the threat of violence, instructed him to go to the bathroom and wait for him. (*Id.* ¶ 24.) Under duress and fearing for his safety, Plaintiff complied and requested permission from Center security staff to go to the bathroom. (*Id.* ¶ 25.) His request was granted, and he was escorted to the bathroom by Center security staff. (*Id.*) Shortly after, Roberts requested permission to go to the bathroom, and Center security staff, allegedly knowing that Plaintiff was already in the bathroom, escorted Roberts to the bathroom and allowed him to enter it. (*Id.* ¶ 26.) Upon entering the bathroom, Roberts threatened Plaintiff and forced Plaintiff against his will to perform oral sex on Roberts. (*Id.* ¶ 27.) From about January 1, 2020 to May 30, 2020, substantially the same series of sexually abusive events occurred about five times. (*Id.* ¶ 29.) Plaintiff alleges that each time these events occurred, Defendants Haynes, Cardinal, and unknown Center security officers 1-4 ("Officers 1-4") knowingly allowed Plaintiff and Roberts access to the bathroom at the same time, and then deliberately refused to monitor and surveil the bathroom and allowed the sexual abuse and victimization to continue to occur. (*Id.* ¶¶ 28-29.)

Around April or May 2020, Plaintiff finally told other inmates about the repeated instances of abuse. (*Id.* ¶ 30.) When Roberts learned that Plaintiff had told other inmates, he violently assaulted Plaintiff, after which Plaintiff was brought to an infirmary, where he told Center staff details about the sexual abuse that had occurred. (*Id.*) Thereafter, the Center conducted an internal investigation which produced security camera footage from the period January 1, 2020 to May 30, 2020, showing Plaintiff being escorted to the bathroom by Center

staff and entering the bathroom, followed by Roberts being escorted to the bathroom by Center staff and entering the bathroom, and Haynes, Cardinal, and Officers 1-4 walking away, looking at their cell phones and talking with other guards and inmates.  (*Id.* ¶ 32-33.)  Plaintiff alleges that Haynes was disciplined in some way based on the evidence discovered through the internal investigation.  (*Id.* ¶ 34.)

The AC alleges that neither OCFS nor the Center had standard operating procedures or policies in place between January and May 2020 to verify that Center security staff were fulfilling their duties.  (*Id.* ¶ 35.)  It further alleges that Defendant Aykroyd Lake, the director of the Center, failed to develop, implement, require, or enforce standard operating procedures or policies to ensure that Haynes, Cardinal, and Officers 1-4 were fulfilling their duties, thereby permitting them to refuse to monitor and surveil the bathrooms.  (*Id.* ¶¶ 36-37.)  Plaintiff alleges upon information and belief that it was standard practice for Center staff, including Haynes, Cardinal, and Officers 1-4, to intentionally ignore the bathrooms when two or more inmates were inside and to deliberately allow physical and sexual abuse to occur, and for Lake to allow Center security staff to abdicate their duties in this manner.  (*Id.* ¶¶ 38-39.)  Plaintiff alleges that the Defendants' actions violated his Eighth Amendment right to be free of cruel and unusual punishment.  (*Id.* ¶¶ 40-41.)

**B.** **Procedural History**

Plaintiff filed his initial complaint on April 25, 2023.  (ECF No. 1.)  On August 29, 2023, and October 11, 2023, respectively, Defendant Lake and Defendants Haynes and Cardinal filed pre-motion letters in anticipation of motions to dismiss, (ECF Nos. 25, 29), to which Plaintiff responded on November 9, 2023, (ECF No. 31).  The Court granted Plaintiff leave to amend,

(ECF No. 32), and Plaintiff filed the amended complaint on November 29, 2023, (ECF No. 34).

The instant motion followed.  (*See* ECF No. 37.)

## II.   LEGAL STANDARD

### A.   Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).[2]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.  While Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  *Iqbal*, 556 U.S. at 678-79.

In considering whether a complaint states a claim upon which relief can be granted, the court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then determines whether the remaining well-pleaded factual allegations, accepted as true, "plausibly give rise to an entitlement to relief."  *Id.* at 679.  Deciding whether a complaint states a plausible claim for relief is "a context-specific task that

---

[2] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

requires the reviewing court to draw on its judicial experience and common sense." *Id.*

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of

misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to

relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).[3]

### B.   Eighth Amendment

The Eighth Amendment, which prohibits cruel and unusual punishment, "requires prison

officials to take reasonable measures to guarantee the safety of inmates in their custody." *Hayes*

*v. N.Y.C. Dep't of Corr.*, 84 F.3d 614, 620 (2d Cir. 1996); *see Farmer v. Brennan*, 511 U.S. 825,

832 (1994).  As such, "prison officials have a duty to protect prisoners from violence at the

hands of other prisoners." *Farmer*, 511 U.S. at 833.  But "not . . . every injury suffered by one

prisoner at the hands of another . . . translates into constitutional liability for prison officials

responsible for the victim's safety." *Id.* at 834.  Instead, "the prisoner must allege actions or

omissions sufficient to demonstrate deliberate indifference; mere negligence will not suffice."

*Hayes*, 84 F. 3d at 620.

The required showing for deliberate indifference is twofold.  For the first element, which

is objective, Plaintiff must show that he is "incarcerated under conditions posing a substantial

risk of serious harm." *Id.*  "A plaintiff may show [either] a substantial risk of harm from a

specific assailant, or a more general risk of harm due to the conditions at the time of the attack,"

---

[3] Plaintiff's counsel cites *Iqbal* and *Twombly*, but also argues that "[a] motion to dismiss under FRCP 12(b)(6) should be granted only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  (ECF No. 39 ("P's Opp.") at 5 (alteration and quotation marks omitted).)  But that standard, based on *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), was "retire[d]" by the Supreme Court in 2007 in *Twombly*, 550 U.S. at 562-63, and the applicable standard is now one of plausibility, *see Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570.  No attorney should be citing to or relying on the "no set of facts" standard 17 years after it has been overruled.

*Hurst v. Perez*, No. 15-CV-4703, 2017 WL 187532, at *2 (S.D.N.Y. Jan. 13, 2017), such as

where "a substantial risk of inmate attacks was longstanding, pervasive, [or] well-documented,"

*Farmer*, 511 U.S. at 842.  Additionally, "[c]ourts may find a substantial risk of serious harm

where there is evidence of a previous altercation between a plaintiff and his attacker, coupled

with a complaint by the plaintiff regarding the altercation or a request by the plaintiff to be

separated from the attacker."  *Mays v. Falu*, No. 18-CV-6145, 2019 WL 6619330, at *7

(S.D.N.Y. Dec. 5, 2019).

 For the second element, which is subjective, Plaintiff "must demonstrate that the

defendant prison officials possessed sufficient culpable intent."  *Hayes*, 84 F.3d at 620.  This

second prong "in turn, involves a two-tier inquiry."  *Id.*  In particular, "a prison official has

sufficient culpable intent if he has knowledge that an inmate faces a substantial risk of serious

harm[,] and he disregards that risk by failing to take reasonable measures to abate the harm."  *Id.*

As the Supreme Court has made clear,

> a prison official cannot be found liable under the Eighth Amendment for denying an
> inmate humane conditions of confinement unless the official knows of and disregards an
> excessive risk to inmate health or safety; the official must both be aware of facts from
> which the inference could be drawn that a substantial risk of serious harm exists, and he
> must also draw the inference.

*Farmer*, 511 U.S. at 837.  A defendant's knowledge can be established through "inference from

circumstantial evidence," including "from the very fact that the risk was obvious."  *Id.* at 842;

*see Ross v. Corr. Officers John & Jane Does 1-5*, 610 F. App'x 75, 77 (2d Cir. 2015) (summary

order) ("Evidence that a risk was obvious or otherwise must have been known to a defendant

may be sufficient to make this showing."); *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (to

the same effect).

In addition, "in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, *inter alia*, the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013); *see Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) ("It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."). While *Colon* laid out a special test for supervisory liability outlining five ways a plaintiff could show the personal involvement of a supervisor, the Second Circuit has clarified that under the Supreme Court's ruling in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the *Colon* test is invalid and "a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 676). Merely being in the chain of command is not enough to satisfy this standard. *See id.* While "'[t]he factors necessary to establish a § 1983 violation will vary with the constitutional provision at issue' because the elements of different constitutional violations vary," *id.* (quoting *Iqbal*, 556 U.S. at 676), "[t]he violation must be established against the supervisory official *directly*," *id.* (emphasis added).

## III.   DISCUSSION

### A.   Defendants Haynes, Cardinal, and Unidentified Officers 1-4[4]

For his first cause of action, Plaintiff alleges that Defendants Haynes, Cardinal, and Officers 1-4 violated his Eighth Amendment rights by subjecting him to cruel and unusual

---

[4] Plaintiff alleges that Officers 1-4 are four security officers at the Center who are yet to be identified and have the same primary responsibilities as Defendants Haynes and Cardinal. (*See* AC ¶¶ 11-13.)  Throughout the AC, Plaintiff refers to the unidentified officers together with Officers Haynes and Cardinal, alleging that they committed the same actions.  Therefore,

punishment in the form of recurring sexual abuse as a result of their being deliberately indifferent to a substantial risk of harm.  (AC ¶ 43.)  Defendants argue that this claim should be dismissed because Plaintiff does not plausibly allege that Defendants were personally involved in a constitutional violation or that they were deliberately indifferent to a substantial risk of harm. (Ds' Mem. at 8.)

With respect to personal involvement, Plaintiff alleges generally that Haynes, Cardinal, and Officers 1-4 knowingly allowed him and Roberts access to the bathroom at the same time and each time did not monitor them.  (*See* AC ¶¶ 28-29, 31-33.)  Defendants argue that these allegations are insufficient because while Plaintiff pleads that Haynes and Cardinal were line officers at the Center during the time of the assaults, he does not plead that they were present at the Center at the time of the assaults, assigned to the SHB Wing at the time of the assaults, or assigned to monitor the bathroom during the alleged assaults.  (Ds' Mem. at 9.)  Moreover, Defendants argue that Plaintiff does not allege that Haynes or Cardinal were the particular staff members who gave Plaintiff and Roberts access to the bathroom and failed to monitor them in any of the instances in which the assault occurred.  (*Id.*)  Overall, Defendants contend that the Amended Complaint fails to specify any personal involvement by Haynes or Cardinal because it only alleges generally that Plaintiff requested permission to go the bathroom from "Center security staff" and that "Center security staff" escorted Roberts to the bathroom.  (*Id.* at 9-10; AC ¶¶ 25-26.)  Plaintiff responds that "[i]t is true that Plaintiff does not know which specific Defendant Guards escorted Plaintiff and then Javon Roberts, on each occasion of abuse, only that

---

although counsel for the Named Defendants do not represent or refer to the unidentified officers in their briefing, the Court considers their arguments regarding Haynes and Cardinal as also applicable to the unidentified officers, and thereby determines whether dismissal of the claims against the unidentified officers is warranted.  *See Cabello-Setlle v. Cnty. of Sullivan*, No. 21-CV-7477, 2022 WL 4387637, at *3 (S.D.N.Y. Sept. 22, 2022).

on each specific occasion, the same Defendant Guards that escorted Plaintiff then also escorted Javon Roberts . . . ."  (ECF No. 39 ("P's Opp.") at 7.)  Plaintiff also argues that Defendants are in possession of the specific information about which Defendants committed the violation on each occasion and that such information will be obtained in discovery.  (*Id.* at 8.)  Plaintiff contends that these allegations adequately plead that all named Defendants directly participated in the violations on one or more occasions between January and May 2020.  (*Id.*)

Defendants are correct that the Amended Complaint only generally alleges that Haynes, Cardinal, and Officers 1-4 allowed Plaintiff and Roberts access to the bathroom at the same time and refused to monitor it.  (*See* AC ¶ 28.)  Further, the Court agrees with Defendants that the Amended Complaint is devoid of factual details as to the days on which the assaults occurred, which guards were present at the Center at the time of the assaults, and which guards escorted Plaintiff and Roberts to the bathroom on each occasion.  (*See* Ds' Mem. at 9-10.)  But Plaintiff also alleges that there is security camera footage showing Plaintiff and Roberts being escorted to the bathroom "by Center staff," and showing Haynes, Cardinal, and the four unidentified officers "walking away, looking at their cell phones, talking with other guards or inmates, and otherwise deliberately and intentionally . . . allowing the sexual abuse . . . to occur."  (AC ¶ 32.)  Taking the factual allegations as true and viewing the inferences in a light most favorable to Plaintiff, as I must at this stage, *see Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996), Plaintiff's allegations that Haynes, Cardinal, and Officers 1-4 allowed Plaintiff and Roberts access to the bathroom and refused to monitor it, while general, are sufficient to plausibly allege Defendants' personal involvement in a constitutional violation.  To be sure, that Defendants might have the details that would allow Plaintiff to allege more specifically who escorted him and Roberts to the bathroom "does not allow Plaintiff[] to shirk [his] pleading obligations."  *Angiulo v. Cnty. of Westchester*,

No. 11-CV-7823, 2012 WL 5278523, at *3 n.4 (S.D.N.Y. Oct. 25, 2012). "[A]s *Iqbal* makes clear, a plausible claim must come *before* discovery, not the other way around." *Id.* (emphasis in original); *see McBeth v. Porges*, 171 F. Supp. 3d 216, 236 (S.D.N.Y. 2016) ("[T]he Federal Rules of Civil Procedure do not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions or speculation."). But at this stage, Plaintiff has sufficiently pleaded the personal involvement of Haynes, Cardinal, and Officers 1-4.

Plaintiff must also plead the objective and subjective prongs of the deliberate indifference test. Plaintiff may establish the objective prong by showing that he faced a substantial risk of harm from Roberts or a general risk of harm at the Center, *see Hurst*, 2017 WL 187532, at *2, such as where "a substantial risk of inmate attacks was longstanding, pervasive, [or] well-documented," *Farmer*, 511 U.S. at 842. Plaintiff fails to plausibly allege either. Plaintiff does not allege that there were previous incidents between him and Roberts, that he complained about such incidents to Defendants or requested to be separated from Roberts, or that Defendants had notice of threats made against him. *See Mays*, 2019 WL 6619330, at *7 ("Courts may find a substantial risk of serious harm where there is evidence of a previous altercation between a plaintiff and his attacker, coupled with a complaint by the plaintiff regarding the altercation or a request by the plaintiff to be separated from the attacker."); *Harrison v. Traylor*, No. 17-CV-6678, 2019 WL 120774, at *6 (S.D.N.Y. Jan. 7, 2019) ("[C]ourts in the Southern District of New York tend to require that prison officials had tangible notice – that is, actual knowledge about a prior altercation between the plaintiff and his attacker or about threats that had been made against the plaintiff, before they can be deemed deliberately indifferent . . . to subsequent inmate-on-inmate violence.") (collecting cases). As Defendants argue, Plaintiff admits that he did not inform Center staff about the abuse until April or May 2020, after the abuses had occurred, (AC

¶ 30), and he presents no other facts suggesting that Defendants otherwise knew of any specific risk Roberts posed to Plaintiff, *see Mays*, 2019 WL 6619330, at *7; *Harrison*, 2019 WL 120774, at *6.

Plaintiff also does not show a general risk of harm because he does not allege that there was a history of inmate-on-inmate attacks in the bathroom or that Defendants had actual knowledge of such a history. *See Farmer*, 511 U.S. at 842-43 ("[I]f an Eighth Amendment plaintiff presents evidence showing that a substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus must have known about it, then such evidence could be sufficient to permit a trier of fact to find that the defendant-official had actual knowledge of the risk."); *Constant v. Prack*, No. 16-CV-3985, 2019 WL 3287818, at *7 (S.D.N.Y. July 19, 2019) (to state claim for deliberate indifference based on general risk of harm, plaintiff must plausibly allege "a longstanding, pervasive, well-documented history of similar attacks, coupled with circumstances suggesting that the defendant-official being sued had been exposed to this information."); *Parris v. New York State Dep't Corr. Servs.*, 947 F. Supp. 2d 354, 363-64 (S.D.N.Y. 2013) ("[T]he Complaint fails to allege that there is a history of serious inmate-on-inmate assaults . . . , that the defendants knew of any such history, or that such prior assaults were similar enough to the attack he suffered that remedial actions would have prevented that attack. Therefore, the plaintiff has failed to allege . . . that the defendants were deliberately indifferent in failing to protect him against a general risk of harm.").

Plaintiff argues in his Opposition that he has alleged an objective risk of harm because inmates in the SHB Wing were likely to sexually assault each other if left unsupervised, and that

he has alleged subjective awareness of that risk because the Center maintained a policy requiring the bathrooms to be monitored when occupied by two or more inmates.  (*See* P's Opp at 9-10.) With respect to the general risk of harm at the Center, the bare allegation that inmates were likely to sexually assault each other "falls far short of the longstanding, pervasive, well-documented history of similar attacks necessary to state a failure-to-protect claim based on a general risk of harm."  *Dietrich v. Cnty. of Orange*, No. 19-CV-10485, 2020 WL 5209816, at *3 (S.D.N.Y. Sept. 1, 2020).  This Court has found that the objective element was not sufficiently alleged where Plaintiff alleged a previous attack, *id.*, and here Plaintiff has not pleaded that there were any previous assaults in the Center's bathroom or at the Center generally.

With respect to Plaintiff's allegations that Defendants failed to follow the Center's policy that the bathroom be supervised when two inmates were present, "[c]ourts in this district have assumed that pro se plaintiffs alleged a substantial risk of serious harm existed where correctional officers failed to follow protocols for inmate safety," *Murphy v. Spaulding*, No. 20-CV-9013, 2022 WL 294552, at *6 (S.D.N.Y. Feb. 1, 2022) (collecting cases), and have been willing at the motion to dismiss stage to assume that *pro se* plaintiffs have plausibly alleged an objective risk of harm where safety protocols have not been followed, *see id.*; *see Rennalls v. Alfredo*, No. 12-CV-5300, 2015 WL 5730332, at *4 (S.D.N.Y. Sept. 30, 2015) ("The Court is willing to assume, given the early stage in this Action, Plaintiff has plausibly alleged that [correction officer's failure to comply with morning cell clean-up protocol] may have put Plaintiff at a substantial risk of serious harm.").  Such a conclusion suggests that apart from a specific risk of harm from one inmate to another or a general risk of harm based on the history and conditions of the facility, there can be a risk of harm based on an officer's failure to follow facility rules put in place for inmate safety.  If the Court were to apply such a liberal

interpretation here, Plaintiff's allegation that Defendants failed to follow the Center's policy could arguably suffice to meet the objective prong.  But the objective element does not stand alone, and Plaintiff must also meet the subjective prong, which he fails to do.

The subjective prong requires Plaintiff to plausibly allege that Defendants both knew that Plaintiff faced a substantial risk of serious harm and disregarded that risk by failing to abate the harm.  *Hayes*, 84 F.3d at 620.  "[I]n deliberate indifference cases involving a defendants' failure to act to protect another against a risk of physical harm, the defendant's subjective awareness of a high degree of risk must be shown; the need for action must be 'plainly obvious' and the harmful consequence of inaction 'highly predictable.'"  *Imperati v. Semple*, No. 18-CV-1847, 2024 WL 2052138, at *6 (D. Conn. May 7, 2024) (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 409-10, 421 (1997)).  Courts have held that "[p]rison officials cannot be said to be deliberately indifferent to a speculative risk that an inmate with a history of violence might attack another inmate for an unknown reason.  Nor does a general risk of violence in a maximum security unit itself establish knowledge of a substantial risk of harm."  *Robinson v. Sposato*, No. 13-CV-3334, 2014 WL 905580, at *7 (S.D.N.Y. Mar. 7, 2014); *see Carbone v. Cnty. of Suffolk*, No. 10-CV-3631, 2013 WL 1386251, at *7 (E.D.N.Y. Apr. 2, 2013).  Thus, without factual allegations that there were previous incidents between Plaintiff and Roberts, that there was a history of prior inmate attacks taking place in the bathroom, that Roberts had threatened Plaintiff or other inmates, or that there were any other specific incidents putting Defendants on notice of even a general risk of harm to inmates, the facts alleged here do not rise to the level of it being "plainly obvious" and "highly predictable" that Roberts would assault Plaintiff.  *Imperati,* 2024 WL 2052138, at *6; *see Manning v. Griffin*, No. 15-CV-3, 2016 WL 1274588, at *10-11 (S.D.N.Y. Mar. 31, 2016) (concluding plaintiff failed to adequately allege

that defendants consciously disregarded substantial risk of harm because amended complaint contained no allegations about pattern of violence in relevant area of prison, that any inmates had ever been involved in attacks or that attacks were common, or that there had been any sexual assaults before plaintiff was sexually assaulted).

Plaintiff's argument amounts to the assertion that simply by virtue of having committed a crime involving sexual harm, every inmate in the SVB Wing obviously presented a risk of sexual assault to every other inmate, and Defendants must have known that. He presents no authority for such a proposition. To be sure, the commendable rule requiring supervision when two or more inmates are in the bathroom[5] suggests that the institution, and perhaps the Defendants, were aware that there were combinations of inmates that might present a risk of sexual assault, but that is a far cry from plausibly alleging that every such pair of inmates presented that risk, let alone that Defendants so understood.

Even if Plaintiff had adequately alleged that Defendants were aware of facts suggesting that Roberts posed a risk of sexual assault to Plaintiff, he has not adequately alleged that they drew that inference – in other words, that they knew of the risk and deliberately disregarded it. Rather, what he alleges – that they were roaming around, using their phones and chatting with other guards or inmates – while deplorable, is no more than negligence. *See Dietrich*, 2020 WL 5209816, at *4 ("The allegation that the guard booth was unstaffed, unaccompanied by facts

---

[5] Plaintiff alleges on information and belief the existence of a rule that two inmates were never to be left alone, and on the same basis alleges that that rule exists for inmate safety. (AC ¶ 20.) He also alleges on information and belief the existence of a written rule that two inmates were not to be unsupervised in the bathroom or shower area. (*Id.* ¶ 21.) He does not indicate the source of his information and belief, *see Citizens United v. Schneiderman*, 882 F.3d 374, 384 (2d Cir. 2018), but I imagine Plaintiff knows of the rules from experience. I do not know on what basis he can know the purpose of the rules. It strikes the Court as likely that inmate safety could well be one reason for the rule, but another could well be prevention of other forms of inmate misconduct.

plausibly showing that any of the . . . Defendants understood that that fact presented a particular risk to Plaintiff's safety, is a claim of mere negligence, which is insufficient to allege a violation of the Eighth Amendment."); *see also Imperati*, 2024 WL 2052138, at *6 ("[T]he [Supreme] Court has clarified that deliberate indifference involves a higher degree of fault than gross negligence."); *Newkirk v. Cnty. of Suffolk*, No. 17-CV-2960, 2022 WL 824137, at *8 (E.D.N.Y. Mar. 18, 2022) ("The means of establishing deliberate indifference will vary given the facts of the case and need not rely on any particular factual showing.  The operative inquiry is whether the facts suggest that the policymaker's inaction was the result of a conscious choice rather than mere negligence.").  Thus, Plaintiff's claims against Haynes, Cardinal, and Officers 1-4 are dismissed.

### B.  <u>Defendants Lake and Unidentified Supervisory Staff Members</u>[6]

For his second and third causes of action, Plaintiff alleges that Lake and other unknown supervisory Center staff violated his Eighth Amendment rights by being deliberately indifferent to a substantial risk of serious harm in that they did not take appropriate or meaningful action to ensure his safety.  (*See* AC ¶¶ 47-50; 53-56.)  Specifically, Plaintiff alleges that Lake is responsible for maintaining the safety of the inmates and training Center security to do the same, (*see id.* ¶ 10), but he did not develop, implement, or utilize standard operating procedures or policies to verify that Center security staff were fulfilling their duties to monitor the bathrooms

---

[6] Plaintiff alleges that the Center supervisors are yet-to-be identified security officer supervisors who are primarily responsible for maintaining security and safety at the Center, protecting the rights of the inmates, and supervising the security line officers to ensure they are protecting inmates.  (*See* AC ¶ 14.)  Plaintiff does not allege any facts as to the actions of these unidentified supervisory staff members or any facts showing that they were personally deliberately indifferent to a serious risk of harm to Plaintiff.  On this basis alone, the Court dismisses the claims against the unknown supervisors.  *See Iqbal*, 556 U.S. at 678; *Parris*, 947 F. Supp. 2d at 364.

and ensure inmates' safety, (*id.* ¶ 36), and he "deliberately, intentionally, recklessly, and negligently refused and failed to enforce the written standard operating policies or procedures of the OCFS and [the] Center. . . [,] allowed and permitted Center security staff . . . to deliberately and intentionally refuse to monitor and surveil the bathrooms," and "allowed inmate-on-inmate physical and sexual abuse to occur," (*id.* ¶ 37; *see also id.* ¶ 39).  Defendants argue that these claims should be dismissed because Plaintiff does not allege that Lake was personally involved in a constitutional violation and has failed to plausibly allege that Lake acted with deliberate indifference to Plaintiff's safety.  (*See* Ds' Mem. at 17-19.)

The Second Circuit has explained that a plaintiff must establish that a supervisor "violated the Eighth Amendment by [his] own conduct, not by reason of [his] supervision of others who committed the violation." *Tangreti*, 983 F.3d at 619.  A plaintiff may, however, "establish a policy-making official's personal involvement by, first, alleging facts from which it may be reasonably inferred the official was responsible for making relevant policies, and thus there is a tangible connection between their policymaking conduct and the alleged harm," and second, "establish[ing] the elements of the underlying claim directly against each defendant" by alleging that "the defendant was aware of a risk of substantial harm to the plaintiff and – through their own actions in making a policy or failing to enact a policy – exhibited deliberate indifference and disregard for that risk."  *Myers ex rel. Est. of Myers v. Davenport*, No. 21-CV-0922, 2022 WL 3017367, at *5 (N.D.N.Y. July 29, 2022).

First, Lake cannot be held liable based on his subordinates' conduct.  *Tangreti*, 983 F.3d at 619; *see Lefler v. Annucci*, No. 22-CV-6468, 2023 WL 6066128, at *3 (W.D.N.Y. Sept. 18, 2023) ("It is well settled that simply being in a high position of authority is an insufficient basis for the imposition of personal liability under 42 U.S.C. § 1983); *Myers*, 2022 WL 3017367, at *4

("[A] Supervisory Defendant . . . cannot be deemed directly involved in a constitutional violation based solely for negligently supervising the alleged offending party."); *Walker v. Capra*, No. 22-CV-7638, 2024 WL 21938, at *5 (S.D.N.Y. Jan. 2, 2024) ("[A] bare allegation of the failure to follow a state law or prison regulation does not constitute personal involvement in a violation of federal constitutional standards.").  Furthermore, the Amended Complaint does not provide facts to support a direct link between Lake's failure to supervise and the occurrence of the sexual assaults, making the allegations largely conclusory.  *See Myers*, 2022 WL 3017367, at *4.

Second, Plaintiff's allegations that Lake failed to develop, utilize, or enforce written policies and procedures to verify that security staff followed the rules also fail.  To succeed on this point, Plaintiff must allege facts showing that Lake was responsible for making the relevant policies and that he was aware of and disregarded a risk of harm to Plaintiff.  *See id.* at *5.  *See Javier v. Russo*, No. 21-CV-7097, 2023 WL 5532468, at *5 (S.D.N.Y. Aug. 28, 2023) ("[T]he amended complaint . . . [does not] contain[] factual allegations from which it may be reasonably inferred [that] these officials were responsible for making relevant policies that resulted in a violation of plaintiff's constitutional rights.").  It is plausible that Lake's responsibility for maintaining the safety of inmates and for hiring and training Center staff, (AC ¶ 10), included setting policies and procedures related to the monitoring of the bathrooms, but Plaintiff pleads that the Center *did* have in place policies and procedures that would have protected him had they been followed.  (AC ¶¶ 19-22.)  He is thus left with the claim that Lake is personally involved because he did not personally ensure that those procedures were followed.  But he provides no facts suggesting that the institution's highest-ranking official was also responsible for verifying, on a day-to-day basis, that staff was complying with those policies.

Moreover, even if the Court were to accept these allegations as sufficient to show that Lake was responsible not only for making the relevant policies but for enforcing them at the staff level, Plaintiff has failed to allege that Lake was aware of and disregarded a substantial risk of harm. As with Defendants Haynes, Cardinal, and Officers 1-4, Plaintiff does not allege that Lake was aware of any risk that Roberts posed to Plaintiff or that there was a general risk of harm, and he does not allege that Lake knew that staff was disregarding the rules in a way that put Plaintiff at risk. *Compare Bernard v. Illinois Dep't of Corr.*, No. 20-CV-5383, 2023 WL 2018915, at \*9 (N.D. Ill. Feb. 15, 2023) ("[I]n the prison context, the general responsibility of a warden for supervising the operation of a prison is not sufficient to establish personal liability. Inaction in the form of deliberate indifference, however, gives rise to a cognizable claim. . . . For example, if the warden were aware of a systematic lapse in enforcement of a policy critical to ensuring inmate safety, his failure to enforce the policy could violate the Eighth Amendment."); *Wilkins v. Poole*, 706 F. Supp. 2d 314, 318 (W.D.N.Y. 2010) (plaintiff failed to state claim against supervisory defendants where plaintiff only made conclusory allegations that defendants should have implemented a more comprehensive policy or staffed the prison yard more heavily and did not allege that supervisory defendants were aware of facts from which they could draw inference that substantial risk of harm to plaintiff existed or that they drew such an inference), *with Myers*, 2022 WL 3017367, at \*8 (plaintiff plausibly alleged that supervisory defendant disregarded known risk of serious harm where one supervisory defendant admitted that preventative procedures were feasible and that she did not implement any policies prior to plaintiff's assault despite known risk of harm, and another supervisory defendant was aware that staff routinely violated facility polices and failed to implement preventative policies or take corrective action prior to or after these violations even after sexual assaults and safety issues).

At most Plaintiff may have alleged that Lake negligently supervised the staff, but he has not alleged that Lake knew Plaintiff was in danger and did not care.  More detailed allegations of supervisory reason to suspect risk of harm have been found to be insufficient.  *Cf. Tangreti*, 983 F.3d at 613-14, 619-20 (supervisor saw inmate lingering at alleged abuser's office doorway, saw the two speak inappropriately about other officers, knew officer to be overly familiar with inmates and observed inmate's deteriorating mental state, but no evidence she drew inference of sexual abuse; record insufficient for any reasonable jury to conclude that supervisor disregarded obvious substantial risk of sexual abuse); *Domroes v. Czerkies*, No. 19-CV-932, 2024 WL 1464078, at *3 (N.D.N.Y. Apr. 4, 2024) (no reasonable jury could find supervisor must have been aware of risk based on alleged abuser sitting close to inmates in classroom, being overly friendly, wearing high-heeled cowboy boots, and passing love-song lyrics to another inmate).

Viewing the allegations in the light most favorable to Plaintiff, he has not plausibly alleged that Lake violated Plaintiff's Eighth Amendment rights directly or was aware of and disregarded a substantial risk of harm to Plaintiff from the failure of others to comply with the relevant policies.  Thus, Plaintiff's claims against Lake are also dismissed.[7]

*        *        *

Taking Plaintiff's allegations as true, what happened to him was horrific.  And if Defendants Hayes and Cardinal were chatting and scrolling their phones instead of doing their jobs, they have no business being in those jobs and bear moral responsibility for the harm to Plaintiff.  But the law requires more to hold them liable.  They must have not only failed to do

---

[7] As the Court has determined that Plaintiff has failed to plausibly allege an Eighth Amendment violation as to any of the Defendants, the Court need not address whether the Defendants are entitled to qualified immunity.  *See Steele-Warrick v. Microgenics Corp.*, 671 F. Supp. 3d 229, 246 (E.D.N.Y. 2023).

their jobs in a way that harmed Plaintiff, but they must be shown to have been aware that what they were doing put Plaintiff in harm's way and not cared.  That is a difficult showing for a plaintiff to ultimately make, and at the motion to dismiss stage it is a difficult fact pattern for a plaintiff to plausibly allege.  While Plaintiff has plainly alleged that he was harmed by Defendants' negligent conduct, his allegations fall short of plausibly alleging the deliberate indifference necessary to render an Eighth Amendment claim plausible.  That does not, taking his allegations as true, make the harm he suffered any less real.

### C.   **Leave to Amend**

Leave to amend a complaint should be freely given "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  "[I]t is within the sound discretion of the district court to grant or deny leave to amend."  *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018).  "Leave to amend, though liberally granted, may properly be denied" for "'repeated failure to cure deficiencies by amendments previously allowed'" or "'futility of amendment,'" among other reasons.  *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Plaintiff has already amended once, after having the benefit of pre-motion letters from Defendants, (*see* ECF Nos. 25, 29).  In general, a plaintiff's failure to fix deficiencies in the previous pleading, after being provided notice of them, is alone sufficient ground to deny leave to amend.  *See Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 257-58 (2d Cir. 2018) ("When a plaintiff was aware of the deficiencies in his complaint when he first amended, he clearly has no right to a second amendment even if the proposed second amended complaint in fact cures the defects of the first.  Simply put, a busy district court need not allow itself to be imposed upon by the presentation of theories seriatim."); *In re Eaton Vance Mut. Funds Fee Litig.*, 380 F. Supp. 2d 222, 242 (S.D.N.Y. 2005) (denying leave to amend because

"the plaintiffs have had two opportunities to cure the defects in their complaints, including a procedure through which the plaintiffs were provided notice of defects in the Consolidated Amended Complaint by the defendants and given a chance to amend their Consolidated Amended Complaint," and "plaintiffs have not submitted a proposed amended complaint that would cure these pleading defects"), *aff'd sub nom. Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 118 (2d Cir. 2007) (*per curiam*) ("[P]laintiffs were not entitled to an advisory opinion from the Court informing them of the deficiencies in the complaint and then an opportunity to cure those deficiencies.").

Further, Plaintiff has not requested leave to amend or suggested that he is in possession of facts that would cure the deficiencies identified in this decision.  *See TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (deciding that plaintiff need not be given leave to amend if he fails to specify how amendment would cure the pleading deficiencies in his complaint); *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (finding that district court did not err in dismissing claim with prejudice in absence of any indication plaintiff could or would provide additional allegations leading to different result); *Horoshko v. Citibank, N.A.*, 373 F.3d 248, 249-50 (2d Cir. 2004) (*per curiam*) (district court did not abuse its discretion by not granting leave to amend where there was no indication as to what might have been added to make complaint viable and plaintiffs did not request leave to amend).

Accordingly, the Court declines to grant leave to amend *sua sponte*.

## IV. <u>**CONCLUSION**</u>

For the foregoing reasons, Defendants' motion to dismiss is GRANTED.  The Clerk of

Court is respectfully directed to terminate the pending motion, (ECF No. 37), and close the case.

**SO ORDERED.**

Dated: June 28, 2024
       White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.